WITZ, BIEDLER & CO. v. S. A. and J. M. GRAY.

*Practice—Application for Receiver—Ancillary Remedy not Allowed when plaintiff is not Entitled to Main Relief—Principal and Agent—Husband and Wife.*

1. To entitle a party to an ancillary remedy he must show that he is entitled to the main relief demanded in the complaint.

2. A judgment cannot be recovered against a *feme covert* on a note alleged to have been executed by her unless the complaint names and describes separate estate belonging to her chargeable with the debts.

3. A judgment cannot be recovered against a married woman in an action against her and her husband when the complaint alleges that the husband is the debtor.

4. Where a receiver is applied for upon the ground that, by reason of fraud practised upon the plaintiff by defendants in the purchase of goods, and that the title never vested in defendants, it is necessary to allege and prove that the goods for which the receiver is applied for are identically the same goods so fraudulently obtained.

5. A husband who, with the wife's consent, acts as the general manager of her store, has no implied authority to execute in her name a note in payment for goods previously purchased.

Motion for a RECEIVER, heard before *Brown, J.,* at *Chambers,* in an action pending in BEAUFORT Superior Court. The motion was refused and plaintiff appealed. The complaint was as follows:

"Plaintiffs for cause of complaint, say—

1 That plaintiffs are partners doing business in the city of Baltimore and State of Maryland.

2. That the defendant S. A. Gray is justly indebted to the plaintiff in the sum of $735.85, with interest from October 18, 1893, until paid, evidenced by a promissory note, a copy of which is attached, marked Exhibit A, the original of which plaintiffs have and are ready to produce when required.

II. For a second cause of action plaintiffs say—

(1) That J. M. Gray was during the year 1893 engaged in conducting the business of a merchant in the town of Washington, county of Beaufort and State of North Carolina, under the name of S. A. Gray, his wife.

(2) That said business had been theretofore conducted in Dare County.

(3) That during said year defendants ordered goods, wares and merchandise to the value of $735.85; that said goods were ordered under the name of S. A. Gray by J. M. Gray and were shipped to S. A. Gray, and were duly received by J. M. Gray under the name of S. A. Gray.

(4) That on the 6th day of June defendants gave to the plaintiffs the paper-writing, a copy of which is hereto attached, marked Exhibit A. That said paper-writing was given by J. M. Gray under the name of S. A. Gray. That the said mercantile business was owned and conducted by J. M. Gray under the name of S. A. Gray, and there is now due plaintiffs the sum of $735.85 with interest from October 18, 1893, until paid.

III. For a third cause of action plaintiffs say—

(1) That S. A. Gray is a *feme covert* and the wife of J. M. Gray, and that as such she is possessed of a separate personal estate to-wit, a stock of goods in the brick store on

116—4

Main street in the town of Washington, between the stores of E. W. Ayers and S. T. Nicholson.

(2) That the said S. A. Gray carries on a mercantile business in the town of Washington, buying goods from Northern merchants and retailing them out again. That J. M. Gray, her husband, is the active business manager of the said business and the same is carried on with his consent.

(3) That during the year 1893 said S. A. Gray, by and with the written consent of her said husband, bought from plaintiffs large quantities of goods which in the aggregate amounted to $735.85. That said goods were ordered by letters and in person in the house, which letters were written by J. M. Gray.

(4) That on the 6th day of June, 1893, in consideration of the said goods having been shipped, said S. A. Gray, by and with the written consent of her said husband, executed to plaintiff her promissory note for $735.85, a copy of which is attached as Exhibit A, and that the said J. M. Gray signed said note as agent for his wife and the consideration enured to the benefit of said S. A. Gray's separate estate.

(5) That there is now due on said note the sum of $735.85, with interest from October 18, 1893, until paid, which said sum is in equity a charge upon said S. A. Gray's separate estate.

IV. For a fourth cause of action plaintiffs say—

(1) That during the year 1893, the defendants J. M. Gray and S. A. Gray, fraudulently contriving and intending to cheat and defraud plaintiffs and others, falsely, fraudulently, and without any intention of paying therefor, ordered from plaintiffs large quantities of goods, to the value of $735.85.

(2) That the said goods were ordered in the name of S. A. Gray, a *feme covert*, the defendants well knowing that

said defendant would not be bound by any contract S. A. Gray might make.

(3) That in pursuance of said plan, as aforesaid, defendants ordered (especially J. M. Gray) said goods to S. A. Gray, and they were shipped to S. A. Gray under the belief that she was capable of contracting.

(4) That said goods were received by defendants, and, in pursuance of their said plan and scheme, they fraudulently converted the same to their own use. That there is due plaintiffs, on account of said purchase, $735.85.

(Then follows the prayer for judgment.)

*Exhibit A was as follows:*

$735.85.            WASHINGTON, N. C., June 6, 1893.

One hundred and thirty-one days after date, I promise to pay to the order of Witz, Biedler & Co., seven hundred and thirty-five 85-100 dollars, at Bank of Washington, Washington, N. C., without offset, for value received.

MRS. S. A. GRAY,
Per J. M. GRAY.

*The Answer of S. A. Gray was as follows:*

First cause of action—

(1) That she believes section 1 to be true.

(2) That she denies section 2 as alleged, and expressly denies that she, or any one by her authority, executed for her any promissory note to plaintiffs.

Second cause of action—

(1) That she admits she was engaged in conducting a mercantile business in the town of Washington during the year 1893, and that J. M. Gray, her husband, acted as salesman in such business; otherwise section 1 is denied.

(2) That she admits having conducted a mercantile business in the county of Dare prior to removing to Washington.

(3) That she admits that she purchased a bill of goods from plaintiffs on or about the____day of_____, 1893 ; that said goods were purchased by verbal order, and not by written order, and that plaintiffs charged for the same the sum of $735.85 ; and otherwise section 3 is denied

(4) That she denies that she gave or executed to plaintiffs the paper-writing referred to in section 4, and she avers she had no knowledge of the same, nor did she consent to the execution thereof, nor has she since ratified the same, and she did not request her said husband to signify his consent in writing that she might charge her separate estate, and he had no authority from her to do so. She denies that the consideration of said alleged paper-writing was the shipping of any merchandise by plaintiffs to her. She denies, again, that her husband, J. M. Gray, owned or had any interest in her said mercantile business. She denies that she is indebted to plaintiffs in any sum in law, or that her separate estate, if any, is liable to be charged with the payment of any alleged indebtedness to plaintiffs.

Third cause of action—

(1) That she admits that she is a *feme covert* and the wife of J. M. Gray. She admits that she conducts a small mercantile business in the town of Washington on Main street as described, and owns the small stock of merchandise therein, and if such be deemed a separate estate, otherwise not ; and she admits she is insolvent.

(2) That she admits that she employs her husband, J. M. Gray, as retail salesman, but she avers that she controls and directs the business, and that she submits that as a *feme covert* she can legally buy merchandise and personal prop-

erty, and sell the same, with or without the consent of her said husband.

(3) That sections 3, 4 and 5 are denied.

Fourth cause of action—

(1) That sections 1, 2, 3 and 4 are denied.

For a further defence this defendant says—

(1) That for several years prior to 1893 she had purchased merchandise from plaintiffs, that plaintiffs well knew that she was a married woman, and also her legal disability as such.

(2) That she denies that she ever executed any executory contract or promissory note to plaintiffs by and with the written consent of her husband, or that she ever authorized her husband to do so in her name; and she avers that she never at any time requested her said husband to give his written consent thereto, and if it was attempted to be done it was without her knowledge or consent or ratification.

(3) That, if the defendant had any separate estate in the way of a stock of merchandise, as alleged, in the year 1893, she has not the identical separate estate at this time, the same having been disposed of in the course of trade. That she denies that the purchase of merchandise, as alleged, was for the benefit of her separate estate."

The motion for a receiver was declined, and plaintiffs excepted and appealed to the Supreme Court.

*Mr. W. B. Rodman*, for plaintiffs (appellants).

*Mr. J. H. Small* and *Messrs. Shepherd & Busbee*, for defendants.

FURCHES, J. :   This is an action of Witz, Biedler & Co. against J. M. Gray and S. A. Gray, husband and wife, to recover $735.85 for goods sold to defendants, for which note, marked Exhibit A, was afterwards given to plaintiffs, and

is brought to this court upon a motion for a receiver before *Brown, J.,* which was refused, and plaintiffs appealed.

This motion is made then in aid of the main relief demanded, and to entitle plaintiffs to this relief, they must allege and show that they are entitled to the main relief —that is, that they are entitled to recover a personal judgment against S. A. Gray, if she were a *feme sole.* And then they must show their equity to entitle them to this ancillary relief in aid of their main relief.

Plaintiffs cannot have this ancillary relief under the first count in their complaint, for the reason that they have failed to name and describe any separate estate as belonging to the *feme* defendant. *Jones* v. *Craigmiles,* 114 N. C., 613.

Plaintiffs cannot have this relief under the second count in their complaint for the same reasons assigned above (*Jones* v. *Craigmiles, supra,*) and for the further reason that in this count they allege that they sold the goods to J. M. Gray and that he is their debtor, and not S. A. Gray, the wife.

Nor can plaintiffs have this relief under the fourth count in their complaint, for the reasons given why they are not entitled to relief under the first count (*Jones* v. *Craigmiles, supra*), and for the further reason that if they are entitled to recover on this count in their complaint, it would be upon the grounds of fraud practiced on plaintiffs by defendants in the purchase of the goods shipped to them and that the title never vested in defendants but is still in plaintiffs. But it is not alleged that the goods now in the store of defendants are the same shipped to them in 1893, which it would be necessary to allege and show to entitle plaintiffs to their motion under this count. In fact it was conceded by the learned counsel for plaintiffs that they were not entitled to this motion under either of these three counts;

but he insisted that he is entitled to have a receiver appointed on the third count in his complaint. And this brings us to one of the questions to be considered and determined in this appeal. And we are of the opinion that plaintiffs are not entitled to a receiver under this count. We have said that plaintiffs are not entitled to have this ancillary relief unless they are entitled to the main relief demanded in their complaint; that is, unless they are entitled to a personal judgment against Mrs. Gray, were she a *feme sole*. It is not alleged that Mrs. Gray signed the note declared on, but that J. M. Gray, the husband, signed the note, and that he was the agent of his wife and as such agent was authorized to do so. The allegation of the complaint, that plaintiffs insist constituted the husband the agent of his wife and authorized him to execute the note sued on, marked Exhibit A, is as follows: "That J. M. Gray, her husband, is the active business manager of the said business and the same is carried on with his consent." Defendants admit that J. M. Gray is the husband of S. A. Gray and that he is her clerk in said store, selling the goods therein, and that he is the general manager of the same, and that all this is by the wife's consent. But defendants deny that J. M. Gray was the agent of S. A. Gray to sign said note, and Mrs. Gray denies that she had any knowledge of the fact that her husband had given such a note, or that she has in any way ratified the same; that her husband in signing said note acted without any authority from her to do so, and without her knowledge or consent.

This presents the question as to the validity of the note, and involves the question of principal and agent. It was admitted on the argument that a husband may be the agent of his wife; and it is admitted in the answer of defendant that J. M. Gray is the clerk and general manager of his wife's store, and in these respects may be considered her

agent. But did this make him her agent to sign her name to a promissory note, such as Exhibit A, for goods bought sometime before, without her knowledge or consent? An agent to bind his principal must act within the scope of the power given by the principal. He may be an agent for one or several things, and no agent for many other things. "An agent authorized to attend to and manage a grocery store, a mere clerk employed in a merchant's store, has no implied power to bind his principal by the execution of negotiable paper." Meacham on Agency, Sec. 391, p. 235. "An agent authorized to buy goods and pay for them is not thereby authorized to draw, accept or endorse negotiable paper, must see to it that his authority is adequate, and both they and the agent must keep strictly within the limits fixed to the agent's authority, or the principal will not be bound." Meacham, *supra*, Sec. 393, p. 236.

It therefore seems to us that the execution of the note sued on by J. M. Gray, was outside of his agency and in excess of any authority alleged or shown by plaintiffs. And if the defendant S. A. Gray was a single woman, plaintiffs would not be entitled to a personal judgment against her on said note; and plaintiffs are certainly not entitled to more than they would be if she were unmarried.

We are of opinion that plaintiffs have failed to establish their main relief—the right to a personal judgment on this note against Mrs. Gray, if she were a single woman. And, that being so, they cannot have the ancillary relief asked, in this motion, *in aid* of a relief they are not entitled to.

Plaintiffs' counsel contended it would be a great hardship to his clients to deny them this relief. If this were true, it would not authorize the Court to grant the order, unless plaintiffs had made a case entitling them to the relief

PEEBLES v. BOONE.

sought under the law and practice of the courts.   But the Court fails to see the great hardship complained of; and we 'do not mean to say by this that plaintiffs should not have pay for their goods.   But it does not appear that there was any fraud practiced on plaintiffs.   They knew Mrs. Gray was a married woman, and it is not alleged that she or her husband represented her as a free-trader.   In fact, the knowledge that she was a married woman, doing business in her name, and her husband acting the part of a clerk, would have been sufficient to put most prudent business men on guard.   But plaintiffs, knowing all these facts, sold her their goods (probably at a very good profit), took the chances, and are now having trouble to collect their money, as most business men would have expected; and, though costly, it may be a valuable lesson.   There is no error in the judgment appealed from.

Affirmed.