R. C. BAZEMORE v. W. E. MOUNTAIN and PATTIE W. MOUNTAIN, his Wife.

(Decided April 3, 1900.)

*Charge Upon the Separate Estate of Wife—Real Property— Personal Property—Description—The Code, Section 1826.*

1. A married woman's separate real estate is not liable under sec. 1826 of The Code.
2. Her separate personal property may be rendered liable by herself, or her agent acting for her with her consent, for necessary supplies for the support of herself and her family. The Code, sec. 1826.
3. The description of her personal property charged as "mules and horses and farming implements, all of which she uses in the cultivation of her said lands for the use of herself and the support of her said family," is not too indefinite.

CIVIL ACTION for necessary family and farming supplies furnished the *feme* defendant for the support of herself and her family for the year 1894, tried before *Hoke, J.,* at May Term, 1899, of the Superior Court of BERTIE County. The complaint alleged that she was the owner of several tracts of

land (describing them), and of personal property (describing it), and that the entire support of the family devolves upon her, and that she has no other source of income than arises from her said lands.

The plaintiff's prayer is for judgment for his debt, and that said judgment be specifically and specially declared a lien and charge upon the separate real and personal estate of Pattie W. Mountain as herein described.

The answer denied every allegation of the complaint.

This is the same case reported in 121 N. C., 59.

Two issues were submitted to the jury:

1. Are the defendants indebted unto the plaintiff, and if so, in what sum? Answer. "Yes; in the sum of $222.58."

2. Is the separate estate of the defendant, Pattie W. Mountain, set out and described in the complaint, chargeable with said sum? Answer. "Yes."

The judgment was set aside so far as it affects the real estate of Pattie W. Mountain, defendant, described in complaint.

The plaintiff excepted and appealed.

Judgment was rendered against the male defendant for the debt, $222.58, and it was further adjudged that the separate personal property of *feme* defendant set out and described in it, to-wit, the horses and mules and farming implements owned and used by her in farming her said real estate, and which were so owned and used at time this action begun, is liable to payment of above debt, to extent necessary to pay same and costs of action, subject to personal property exemption of said *feme* defendant, and that *ven. ex.* issue from this Court commanding sheriff of Bertie County, after setting apart said exemption, should same be demanded, to sell said personal estate, or so much as may be necessary, and apply proceeds to payment of said debt and costs.

The defendants excepted on the ground that the personal property was insufficiently described, and also appealed.

*Messrs. St. Leon Scull, B. B. Winborne,* and *R. B. Peebles,* for appellants.

*Mr. Francis D. Winston,* for appellee.

### DEFENDANTS' APPEAL.

FURCHES, J.    We consider first the defendants' appeal, for the reason that it is much fuller than the record in the plaintiff's appeal—containing the evidence and charge of the Court, which is not set out in the transcript of the plaintiff's appeal.

This case was here at Fall Term, 1897, upon a judgment of nonsuit, and appeal by the plaintiff—reported in 121 N. C., 59.    In that case, under the repeated rulings of this Court, we were compelled to take every fact which plaintiff's evidence tended to prove, as proved; and under this rule of construction, we set aside the judgment of nonsuit, and awarded the plaintiff a new trial.    In doing this, in that appeal, we undertook to lay down the rules of law governing the case.    And upon a careful examination of the record of the trial presented upon this appeal, we fail to see any substantial error.    It is true that there is an exception to that part of the Judge's charge, "That if the supplies were furnished on the faith of the husband's promise that he and his wife would give a mortgage on her separate estate, and he had authority from his wife to make such a contract, and the supplies were to farm the wife's property, on the rents of which she was dependent for support, the jury will find the issue for the plaintiff—Yes."

If the first part of this paragraph had stood alone—"That if the supplies were furnished on the faith of the husband's

promise that he and his wife would give a mortgage on the separate estate" of the wife, we think the charge would have been obnoxious to the exception of the defendant; but, when taken in connection with the balance of the paragraph, we do not think that it is.

So far as we are able to see, the Court was authorized by the opinion of the Court in this case when here before, to give the instructions it did. Indeed, it seems to us that the case was fairly tried under the rules laid down by the Court on the former appeal.

The exceptions to the judgment, on account of a want of description of the defendant's personal property can not be sustained. This property is described in the complaint as the *feme* defendant's "mules and horses and farming implements, all of which she uses in the cultivation of her said land for the use of herself, and the support of her said family." It is true that this is not a very specific description, but we think sufficient. Indeed, we do not see how it could have been much more specific. It can not be contended that the plaintiff should have given a description of every horse or mule, or every piece of farming implement.

And as we find no ground upon which the defendants' exceptions to the evidence can be sustained, the judgment of the Court below must be affirmed.

## IN PLAINTIFF'S APPEAL IN SAME CASE.

FURCHES, J. The only question presented in this appeal is whether the *feme* defendant's real estate is liable to sale under the plaintiff's judgment. When the case was here before (121 N. C., 59), the opinion of the Court restricted her liability to her personal property, and we will have to do so now. This seems no longer to be an open question, whatever construction sec. 1826 of The Code may have

been liable to, before it was construed. But in *Jones v. Craigmiles,* 114 N. C., 613, and in *Ulman v. Mace,* 115 N. C., 24, the liability was limited to the personal property of the *feme* defendant. And in *Bates v. Sultan,* 117 N. C., 94, it is expressly held that the real estate of the *feme* defendant is not liable; and *Bates v. Sultan* is put upon *Farthing v. Shields,* 106 N. C., 289, where it was held that the *feme's* real estate was not liable.

We have not discussed this question, but have contented ourselves by citing a number of cases where the question seems to have been discussed and settled. We find no error in the judgment appealed from, and it is

Affirmed.

CLARK, J., dissenting in plaintiff's appeal: The Code, sec. 1826, makes no distinction between realty and personalty. It incapacitates any married woman to make "any contract to affect her *real or personal* estate except for her necessary personal expenses or for the support of the family," etc., without the written consent of her husband, unless she be a free trader. In this case, the articles furnished were for the support of her family, and consequently her contract for them affects her real as well as her personal estate.

No support for the contrary view can be derived from the Constitution, which guarantees that a married woman shall retain the same rights over her property, both "real and personal," in the same plight and condition "as if she were unmarried," save for the veto given her husband upon her "conveyances." There is no distinction there made between realty and personalty, and if by any conceivable process of reasoning, contracting could be construed to come within the constitutional provision requiring the husband's assent to "conveyances," then it would forbid contracts altogether by a

married woman without the written assent of the husband, and set aside sec. 1826 *in toto.* There is no possible escape from this result.

The only ground advanced has been that, as by the Constitution a married woman can not convey without her husband's written assent, to allow her to contract without it, would be "to permit her to do indirectly that she can not do directly." But for more than two hundred years the statute of frauds has made invalid contracts as to realty, and some other contracts, unless in writing, and no court has ever conceived that verbal contracts did not create a valid liability under which payment could be enforced out of realty "because that would permit to be done indirectly what can not be done directly." Besides, as just said, if forbidding "conveying" without the written assent of the husband forbids "contracting" without such assent, that abolishes sec. 1826, for that does allow "contracting without assent" in three classes of cases. It would also render unconstitutional all legislation (Code, secs. 1827-32) permitting a married woman to become a free trader if the constitutional requirement of the husband's assent to "conveyances" embraces "contracts." Yet such legislation has been held constitutional. *Hall v. Walker,* 118 N. C., 377.

If, however, sec. 1826 is unconstitutional, it is for the directly opposite reason—not because it permits a married woman in three specified instances to make contracts whereby "her real and personal estate" may be subjected to the payment of liabilities incurred thereby, but because it restricts her right of contracting in other cases, when the Constitution guarantees the retention of her property rights, and of course her property liabilities, except only that the husband is to have a veto upon her conveyances.

In truth, several decisions rendered prior to this Court, as now constituted, made, if not inadvertently, under the strong influence of preconceived views based upon a married woman's

BAZEMORE *v.* MOUNTAIN.

status prior to the radical change in that regard effected by the Constitution of 1868, are in direct conflict with that Constitution, and with the statute. The Constitution gives a married woman the same property rights as if she had remained unmarried, save only as to conveyances. The statute (Code, 1826), infringes on that broad guarantee by taking away the right to contract, save in three cases. And the decisions further infringe upon the constitutional guarantee by reducing the power to contract, in the three instances, specified in the statute, by adding by judicial legislation the words "and in even in those three cases, her contracts can only be enforced out of her personalty." There is no warrant for this anywhere. Our loyalty is due to the Constitution, and the precedents should be made to conform to it. The Constitution should not be bent to fit mistaken precedents. An error, no matter how often repeated, is simply an error still. Ten times zero is only zero.

When this case was here before (121 N. C., 59), nothing was said as to the liability of the defendant's realty, but it was simply held that the *feme* defendant's personalty was liable for her contracts for the support of her family, as provided in sec. 1826, and that has been reaffirmed in the defendant's appeal, *supra*. But the very same sec. 1826, which allows a married woman's personalty to be liable for contracts for the support of her family, equally allows her realty to be subjected for the payment of her contracts for that purpose. The statute has united them; by what authority is the Court empowered to put them asunder?